UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:14CV-00522-JHM

KATHERINE FRAZE                                                                    PLAINTIFF

V.

METROPOLITAN PROPERTY AND CASUALTY
INSURANCE COMPANY                                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Metropolitan Property and Casualty Insurance Company, for summary judgment [DN 55] and on a motion to strike [DN 71]. Defendant has requested oral arguments on both of the motions. The Court finds oral arguments unnecessary. Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

This action concerns an insurance claim resulting from a fire at a farmhouse on Billtown Road which is owned by Jean Decker. The Plaintiff, Kathy Fraze, served as Ms. Decker's caregiver since the death of Ms. Decker's son on December 6, 2012. On December 14, 2012, Plaintiff applied for renter's insurance from Defendant, Metropolitan Property and Casualty Insurance Company to cover personal property located in the farmhouse. According to the Plaintiff, some of the contents in the farmhouse had been gifted to her by Ms. Decker after the death of Ms. Decker's son.

Plaintiff went to Norwood Insurance Services LLC in New Albany, Indiana, to obtain the insurance. She had previously purchased automobile insurance from that agency. She discussed her insurance needs with agent Michael Sanders. Plaintiff testified that she lived both at her 130-acre camp in Indiana and in the Billtown Road farmhouse prior to the fire. Plaintiff further

testified that during this time, she was preparing the farmhouse for Jean Decker to move in with her.  Plaintiff represents that she advised Sanders of this information.  Sanders received this information from Plaintiff and entered it into the Homeowner application.  Plaintiff indicated that she reviewed the application with Sanders and signed the application at Sanders' request.  Additionally, Plaintiff indicates that Sanders discussed with her the contents that she wanted insured, and he suggested that the personal property be insured for $52,000.  A review of the application reveals that Sanders failed to complete the General Information for renters requested at the bottom of page four of six of the application.

On July 22, 2013, the Jeffersontown Fire Department responded to a report of a fire at the Billtown property.  Arson investigators from the Louisville Metro Arson Investigation Unit determined that a lamp and/or an electrical extension cord plugged into a socket in the main bedroom likely caused the fire.  On July 24, 2013, Plaintiff contacted Metropolitan and reported the fire at the Billtown property.  The following day, Metropolitan adjuster Ricky Pearson met with Plaintiff at the house for an initial inspection.  He informed Plaintiff that she needed to prepare an inventory of all her personal property lost in the fire.  On August 12, 2013, Plaintiff met with Pearson at the Billtown property.  Pearson avers that he inspected the property attempting to locate the items Plaintiff claimed as lost in the fire and listed on her inventory.  Pearson states he found none.  Metropolitan states that during both inspections, on July 25, 2013 and August 12, 2013, Pearson photographed the exterior and interior of the Billtown house.

On November 11, 2013, Plaintiff submitted a Sworn Statement in Proof of Loss to Metropolitan, attached to a letter from her attorney.  In her Sworn Proof of Loss, Plaintiff represented that she was a residential renter of the Billtown property, claimed a total loss of her personal property in the fire, and placed the total value of her loss at $37,500.  Plaintiff identified

numerous pieces of furniture, electronics, camera equipment, and jewelry located in the home, including antique items.  Plaintiff participated in two Examinations Under Oath, January 17, 2014, and June 5, 2014.

Despite Plaintiff's claim and demand, the Defendant has failed to pay the claim.  On July 22, 2014, Plaintiff filed this action against Defendant for breach of the insurance contract and for bad faith.  Defendant answered and filed a counterclaim seeking a judgment declaring the rights of the respective parties as to the insurance coverage available to Plaintiff under the policy in question.  The Defendant has now filed a motion for summary judgment seeking a declaration that the Renter's Insurance Policy is null and void and that Metropolitan owes no insurance coverage to Plaintiff for her claimed loss herein.

## II.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-

moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III.  DISCUSSION

There is no dispute that the renter's insurance policy was in force at the time of the fire loss.  However, Metropolitan contends that the renter's insurance policy is void as a matter of law because Fraze made material misrepresentations during the application for renter's insurance regarding her residency status and made fraudulent statements with respect to the items destroyed in the fire and their value.

### A.  Misrepresentation on the Application

Kentucky law provides that "a misrepresentation voids an insurance policy if the misrepresentation is 'material' to the acceptance of risk or if the insurance company would not have issued the policy if the true facts had been made known."  Continental Cas. Co. v. Law Offices of Melbourne Mills, Jr., PLLC, 676 F.3d 534, 538 (6th Cir. 2012).  This principle is grounded in the Kentucky Insurance Code, which explains that "[m]isrepresentations, omissions, and incorrect statements" on insurance applications prevent recovery if the statements are:

> (1) Fraudulent; or
>
> (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an

4

> amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

KRS § 304.14–110.  Moreover, even an innocently made misrepresentation will defeat recovery on the policy issued if such representations are false and material to the insurer's risk.  Koch v. Owners Ins. Co., 996 F. Supp. 2d 531 (W.D. Ky. Jan. 28, 2014).

Defendant argues that summary judgment is proper in this matter because Plaintiff both intentionally and falsely misrepresented that she resided at the insured premises on her application for Renter's Insurance.  According to Defendant, Plaintiff's misrepresentation was also material since Metropolitan would not have issued her a Renter's Policy but for the Plaintiff's misrepresentation that she resided, full-time, at the Billtown property.

The Court first notes that Metropolitan argues that Plaintiff represented on her application that she resided "full-time" at the Billtown property.  Assuming that is so, the Court is not convinced that such a representation is material to the risk.  The affidavit of the underwriter, Spring Brandon, indicates that the insurance policy would not have been issued unless Plaintiff was residing in or occupying the insured premises, and that it is not Metropolitan's practice to issue renter's insurance at vacant or unoccupied residences.  That falls short of saying the policy would not have been issued unless Plaintiff lived there full-time.

Thus, it appears the material question is whether Plaintiff's representations that she resided at the property are false. Defendant cites the arson investigator's observation that when he arrived at the house it was vacant and unsecured; the neighbors' affidavits indicating that they had seen no signs of residency at the Billtown farmhouse; the disgusting and unlivable conditions of the Billtown farmhouse; and the discrepancy of the date Plaintiff represents she moved into the premises.  While the evidence is strongly in Defendant's favor on this question,

viewing all the facts in a light most favorable to Plaintiff, the Court finds that genuine issues of material fact exist, and summary judgment is inappropriate.

### C. Misrepresentation concerning the Property Loss

Metropolitan contends that the renter's insurance policy is void as a matter of law because Fraze made material misrepresentations and false statements during the investigation of her claim.  Under Kentucky law, "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms." State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co., 550 S.W.2d 554, 557 (Ky. 1977). The policy at issue in this matter provides that "[i]f any person defined as **you** conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy to any person defined as **you**." (DN 60, Exhibit T at 41.)  The fraud provision in Fraze's policy "'is common to most fire insurance policies and is uniformly held valid so that it will defeat a recovery under the contract if false statements in proof of loss were intentionally made and disclose a purpose to fraudulently overvalue the property or include non-existent items.'" Crowe v. Trustgard Ins. Co., 2015 WL 541265, *2 (E.D. Ky. Feb. 10, 2015)(citing Home Ins. Co. v. Hardin, 528 S.W.2d 723, 725 (Ky. 1975)).

Metropolitan claims that Fraze misrepresented material facts during the processing of her claim including the submission of false inventory of non-existent and non-owned items claimed lost in the fire; submitted a fraudulent estimation of actual cash values or, at a minimum grossly overestimated the values, of the items; and falsely represented the expert opinions of an antiques expert as validating the actual cash values in her Sworn Proof of Loss.  Metropolitan maintains

6

that while Fraze submitted a very detailed inventory of her loss, she has failed to submit actual proof to support her claim that any of these items ever existed in the Billtown house or the valuation of these items.  Additionally, Metropolitan takes issue with Fraze's suggestion during her deposition that it appeared that certain items she claimed lost in the fire "disintegrated." Metropolitan claims that such an explanation defies the laws of physics and thermal dynamics. Metropolitan relies upon the testimony of Sergeant Hilary Washington, the lead arson investigator, regarding the remains she observed in the home and the severity of the fire. Metropolitan also cites to the testimony of Ricky Pearson, Metropolitan claim adjuster.

While a jury might find that Metropolitan's conclusion that Plaintiff submitted a false lost item inventory is based on a reasoned consideration of the facts, Metropolitan's conclusion is based on an assessment of Fraze's credibility and the evidence surrounding the fire loss. Although Metropolitan is entitled to make these inferences and credibility determinations in deciding whether to approve or deny Fraze's fire loss claim, the Court is not permitted to do so when faced with a motion for summary judgment. See, e.g., Crowe, 2015 WL 541265, at *2–3 (citing Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 374 (6th Cir. 2009) ("In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited."); Lenscrafters, Inc. v. Robinson, 403 F.3d 798, 802 (6th Cir. 2005) ("A court considering a summary judgment motion considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party."). See also Nationwide Mut. Fire Ins. Co. v. Castle, 2014 WL 1600585, *3–4 (E.D. Ky. Apr. 21, 2014).

Viewing the record most favorably to the Plaintiff, a reasonable jury could conclude that Fraze accurately reported the items lost in the fire, accept Plaintiff's explanation that when she left the morning of the fire those items were present in the home, and find that Plaintiff did not

include non-existent items in her Proof of Loss.  Further, a reasonable juror could find that

Plaintiff did not intentionally or fraudulently overvalue the property in question.  For these

reasons, the Court denies Defendant's motion for summary judgment.

### D. Judicial Estoppel

The doctrine of judicial estoppel prohibits a party from asserting a position in a legal

proceeding that is contrary to a position successfully taken by the party in some earlier legal

proceeding.  Reynolds v. Commissioner of Internal Revenue, 861 F.2d 469, 472 (6th Cir. 1988).

The application of judicial estoppel is controlled by federal law. Allen v. Zurich Ins. Co., 667

F.2d 1162, 1167 n. 4 (4th Cir. 1982).  Because the doctrine "is intended to protect the integrity of

the judicial process, it is an equitable doctrine invoked by a court at its discretion."  Russell v.

Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990); Matter of Cassidy, 892 F.2d 637, 642 (7th Cir.

1990).

"[J]udicial estoppel is an extraordinary remedy to be invoked when a party's inconsistent

behavior will otherwise result in a miscarriage of justice."  Ryan Operations G.P. v. Santiam–

Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996)(internal quotation omitted).  It "is not

meant to be a technical defense for litigants seeking to derail potentially meritorious claims,

especially when the alleged inconsistency is insignificant at best and there is no evidence of

intent to manipulate or mislead the courts." Id.  In Johnson v. Lindon City Corp., 405 F.3d 1065,

1069 (10th Cir. 2005), the Tenth Circuit reviewed factors typically used to determine when to

apply judicial estoppel:

> "First, a party's later position must be 'clearly inconsistent' with
> its earlier position."  Id. (citation omitted). Moreover, the position
> to be estopped must generally be one of fact rather than of law or
> legal theory. Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996).
> Second, "whether the party has succeeded in persuading a court to
> accept that party's earlier position, so that judicial acceptance of an

> inconsistent position in a later proceeding 'would create the perception that either the first or the second court was misled.'" New Hampshire [v. Maine, 532 U.S. 742, 750 (2001)](citation omitted). The requirement that a previous court has accepted the prior inconsistent factual position "ensures that judicial estoppel is applied in the narrowest of circumstances." Lowery, 92 F.3d at 224. Third, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire, 532 U.S. at 750.

Metropolitan argues that Plaintiff should be judicially estopped from recovery under the renter's insurance policy because she failed to completely disclose her personal assets during a bankruptcy renewal that occurred in February of 2012. Metropolitan maintains that on the inventory submitted in Plaintiff's proof of loss, Plaintiff identified many items that she claimed to have brought to the Billtown property from Indiana, including many designer purses, boots, shoes, and tents. Metropolitan argues that none of these items described by Plaintiff were listed on Schedule B of her Chapter 13 renewal filed with the Bankruptcy Court in February of 2012. Specifically, Metropolitan argues that Plaintiff now seeks to recover $5,000 on her November 11, 2013, Proof of Loss to Metropolitan for items of clothing that, according to her Chapter 13 filed in February of 2012, Plaintiff claimed was only worth $50.00 in total. (DN 60, Exhibit W at 20, 23.)

The Court does not view Plaintiff's position in the present case regarding the items claimed in her proof of loss to be clearly inconsistent with her Chapter 13 bankruptcy renewal. The bankruptcy renewal was filed in February of 2012 and the fire damage occurred in July of 2013. While this evidence may be appropriate for cross examination of Fraze, it does not establish sufficient information to justify judicial estoppel of Plaintiff's breach of contract claim in the present case. Accordingly, summary judgment is not appropriate based on judicial estoppel.

#### IV.  MOTION TO STRIKE

Defendant moves to strike portions of Plaintiff's memorandum in opposition to Defendant's motion for summary judgment.  Defendant specifically moves to strike portions of Plaintiff's affidavit [DN 68-2], and strike, in their entirety, the affidavits of Jean Decker [DN 68-3], Victoria Martin [DN 68-6], Monna Nabers [DN 68-7], and Philip Burnett [DN 68-8], in addition to any references to these same matters contained in Plaintiff's Memorandum in Opposition.

#### A. Affidavits of Martin, Nabers, and Burnett

Defendant argues that because Plaintiff failed to identify Victoria Martin, Monna Nabers, and Philip Burnett in her Fed. R. Civ. P. 26 disclosures and her verified responses to Defendant's Interrogatories, the Court should strike these affidavits pursuant to Fed. R. Civ. P. 37(c)(1).

Rule 26(a)(1)(A) requires a party to disclose the names of "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." "Under Fed. R. Civ. R. 26(e)(1) Plaintiff [has] a continuing duty to 'supplement or correct its disclosure.'" White v. City of Middletown, 45 F. Supp. 3d 195, 208-209 (D. Conn. 2014). However, this obligation is triggered only if "'the party learns that in some material respect the disclosure . . . is incomplete . . . and if the additional . . . information has not otherwise been made known to the other parties during the discovery process or in writing.'" Id. at 209 (emphasis removed)(quoting Fed. R. Civ. P. 26(e)(1)).  Fed. R. Civ. P. 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Courts "recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised

with caution." White, 45 F. Supp. 3d at 208.  See also Taylor v. Thomas, 2013 WL 4048551, *1 (W.D. Tenn. Aug. 9, 2013), aff'd, 624 Fed. Appx. 322 (6th Cir. 2015).  "In interpreting the Advisory Committee notes to Rule 37(c)(1), [the Sixth Circuit] interpreted harmless as 'involv[ing] an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" Boegh v. United States, 2010 WL 4286150, *1 (W.D. Ky. Oct. 22, 2010) (quoting Vance v. United States, 182 F.3d 920, 1999 WL 455435, *5 (6th Cir. June 25, 1999)). See also Sommer v. Davis, 317 F.3d 686, 692 (6th Cir. 2003).

Here, the affidavits of Martin, Nabers, and Burnett directly concern the disputed issues in this case, and Defendant was unable to evaluate the witnesses before their affidavits were submitted in support of Plaintiff's objection to the motion for summary judgment.  The fact that Defendant may be able to depose these witnesses prior to trial does not bear on the admissibility of their affidavits at this stage of the proceeding.  The Court finds that the appropriate sanction for the Rule 26(a) violation is the exclusion of the witnesses' affidavits from consideration in connection with Defendant's motion for summary judgment.  "The purpose of Rule 26 is to ensure that opposing counsel know of witnesses and evidence with relevant discoverable information." Jackson v. Herrington, 2011 WL 1750800, *3 (W.D. Ky. May 6, 2011).  However, the Court does not find any reason to prevent Plaintiff from updating her Rule 26 disclosures, as she has done, to allow for future testimony from these three witnesses should this case proceed to trial.

Accordingly, Defendant's motion to strike the affidavits of Martin, Nabers, and Burnett is granted, and these affidavits will not be considered in support of Plaintiff's opposition to Defendant's motion for summary judgment.  The Court denies Defendant's request to strike Plaintiff's supplement to its Rule 26(a)(1) disclosures.  (Defendant Reply [DN 79] at 6.)

Discovery will be extended to provide Defendant time to take the deposition of these three witnesses.  See Cao Group., Inc. v. Federal-Mogul Corp., 2011 WL 1058921, *3 (E.D. Mich. Mar. 21, 2011)("Extending discovery to allow the plaintiff to take [the witness's] deposition would alleviate any potential harm.").

### B.  Affidavit of Katherine Fraze

Generally, "a party cannot create a disputed issue of material fact by filing an affidavit that contradicts the party's earlier deposition testimony." Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 906 (6th Cir. 2006).  The purpose of such a rule is to "bar[ ] the nonmoving party from avoiding summary judgment by simply filing an affidavit that directly contradicts that party's previous testimony." Id. at 907.  The rule does not prohibit "a party who was not directly questioned about an issue from supplementing incomplete deposition testimony with a sworn affidavit." Id. "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." Id. at 908.  "[A]n affidavit with no direct contradiction should be stricken only if the affidavit is an attempt to create a 'sham fact' issue." Runkle v. Pancake, 2012 WL 3684345, *13 (W.D. Ky. Aug. 27, 2012).  See also White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 877 (6th Cir. 2012).

Initially, it should be noted that the Court did not rely upon the challenged portions of Fraze's affidavit to decide the motion for summary judgment. (Fraze Affidavit ¶¶ 2, 5, 6, 7, 8, 9, 12, 14, 15, 21, 22, 23, 25, 26, 29, 33, 36, 37, 38, 39, 40, and 46.)   Notwithstanding, the Court finds that the affidavit of Katherine Fraze, with one exception, does not appear to directly contradict Fraze's previous EUO testimony and/or her sworn discovery responses.  For example, Defendant asserts that Plaintiff now ascribes Jean Decker's concern for the "family pieces" as the impetus for Plaintiff obtaining Renter's Insurance, not Plaintiff's concern for her own

property.  However, the cited testimony reflects that in the January 2014 EUO, Fraze testified that Jean suggested she get a renter's insurance policy to cover Fraze's personal property. Similarly, in her affidavit, Fraze avers that Jean suggested that Fraze obtain the renter's insurance policy because she was concerned about the family pieces that Jean had gifted to Fraze (i.e., Fraze's personal property).  Accordingly, the Court will not grant Defendant's motion to strike the affidavit of Fraze.  See, e.g., Dye v. Office of the Racing Comm'n, 702 F.3d 286, 308 (6th Cir. 2012) (declining to strike affidavit because the opposing party had not shown that "the affidavit directly contradicts the deposition testimony or that the affidavit was effectuated for the purpose of creating a sham issue of fact").  See also Rayfield v. American Reliable Ins. Co., 641 Fed. Appx. 533, 540 (6th Cir. 2016).

In as much as there is some contradiction or confusion about if and when Fraze allegedly began moving into the Billtown farmhouse, the question of her residency at the home, if necessary, will be an issue for the jury.  Finally, in as much as Fraze cites the affidavits of Martin, Nabers, and Burnett in her affidavit, the Court will strike reference to those for purposes of this motion.  (See Fraze Affidavit at ¶22 (last sentence), ¶26 (first three sentences), ¶ 29 (first sentence).)

### C.  Affidavit of Jean Decker

Defendant seeks to strike the affidavit of Jean Decker describing her affidavit as an ill-disguised attempt to create a sham fact issue to avoid summary judgment.  Ms. Decker tendered an affidavit addressing the statements made in the affidavits of Defendant's witnesses, Sean Brinley, Donald Kimbro, and Donnie Snelling.  Additionally, Ms. Decker sought to "clear up" some misunderstandings and make some corrections to her May 2016 deposition testimony.

In the instant matter, Ms. Decker, 96 years old at the time of her deposition, was clearly confused by some of the questions and struggled to recall details and dates in her deposition. Ms. Decker explains in her affidavit that at her age, her memory regarding dates, times, and years often escape her. (Decker Affidavit at ¶ 4(k).)  For example, Ms. Decker's confusion was demonstrated in her deposition testimony that her daughter and her son died from cancer "right after one another," when it is undisputed that their deaths were actually 12 years apart.  The Sixth Circuit recognizes that district courts are permitted "to consider post-deposition affidavits that appear to contradict prior deposition testimony so long as the affidavit is not intended to create a sham issue of fact—that is, if the nonmoving party was confused during the deposition or has some other legitimate justification." Aerel, 448 F.3d at 908 (citing Miller v. A.H. Robins, Co., Inc., 766 F.2d 1102, 1104 (7th Cir. 1985) (holding that "an inconsistent affidavit may preclude summary judgment . . . if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence").  Here, Ms. Decker's affidavit does not appear to be presented to create a shame issue of fact, instead the affidavit was intended to clarify some issues that Ms. Decker had difficulty with at the time of the deposition. Furthermore, while Ms. Decker's affidavit testimony confirms that she gifted personal property to Fraze and that property was present in the home prior to the death of Ms. Decker's son in December of 2012, her affidavit is not even necessary.  The deposition of Fraze, along with her insurance application and proof of loss, created genuine disputes of fact as to this issue.  For these reasons, the Court denies Defendant's motion to strike the affidavit of Ms. Decker.

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by

Defendant, Metropolitan Property and Casualty Insurance Company, for summary judgment [DN 55] is **DENIED**.

      **IT IS FURTHER ORDERED** that the motion by Defendant to strike [DN 71] is **GRANTED IN PART AND DENIED IN PART** consistent with this Opinion.   The discovery deadline is extended in this matter to **April 10, 2017**, for the limited purpose of Defendant taking the deposition testimony of Victoria Martin, Monna Nabers, and Philip Burnett.

      **IT IS FURTHER ORDERED** that Defendant's request for oral arguments on both of the motions is **DENIED.**

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

March 10, 2017

cc: counsel of record